# United States Court of Appeals for the Federal Circuit

2008-1333

BALL AEROSOL AND SPECIALTY CONTAINER, INC.,

Plaintiff-Appellee,

v.

LIMITED BRANDS, INC.,
BATH & BODY WORKS, INC., HENRI BENDEL, INC.,
and BATH & BODY WORKS, INC. (doing business as The White Barn Candle Co.),

Defendants-Appellants.

McPherson D. Moore, Polster, Lieder, Woodruff & Lucchesi, L.C., of St. Louis, Missouri, argued for plaintiff-appellee. With him on the brief were Douglas D. Churovich and William B. Cunningham, Jr.

Gregory A. Castanias, Jones Day, of Washington, DC, argued for defendant-appellant. With him on the brief were Luke, A. Sobota and Marc S. Blackman, Jones Day, of Chicago, Illinois; and John F. Ward, David M. Hill and Michael J. Zinna, Ward & Olivo, of New York, New York.

Appealed from: United States District Court for the Northern District of Illinois

Judge Samuel Der-Yeghiayan

# United States Court of Appeals for the Federal Circuit

2008-1333

BALL AEROSOL AND SPECIALTY CONTAINER, INC.,

Plaintiff-Appellee,

v.

LIMITED BRANDS, INC.,
BATH & BODY WORKS, INC., HENRI BENDEL, INC.,
and BATH & BODY WORKS, INC. (doing business as The White Barn Candle Co.),

Defendants-Appellants.

Appeal from the United States District Court for the Northern District of Illinois in Case No. 05-CV-3684, Judge Samuel Der-Yeghiayan.

_____

DECIDED: February 9, 2009

_____

Before LOURIE, CLEVENGER, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Limited Brands, Inc., Bath & Body Works, Inc., Henri Bendel, Inc., and Bath & Body Works, Inc. doing business as The White Barn Candle Co. (collectively, "Limited") appeal from the final judgment of the United States District Court for the Northern District of Illinois granting summary judgment of validity and infringement of U.S. Patent 6,457,969 ("the '969 patent"), awarding damages, and denying a motion for reconsideration. See Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc., 553 F. Supp. 2d 939 (N.D. Ill. 2008); Ball Aerosol & Specialty Container, Inc. v. Limited

Brands, Inc., 514 F. Supp. 2d 1051 (N.D. Ill. 2007); Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc., No. 05-CV-3684 (N.D. Ill. June 30, 2006) (document 137) ("Validity Motion"); Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc., No. 05-CV-3684 (N.D. Ill. June 28, 2006) (document 139) ("Infringement Opinion"); U.S. Can Co. v. Limited Brands, Inc., No. 05-CV-3684, 2006 WL 1049581 (N.D. Ill. Apr. 19, 2006) ("Claim Construction Opinion"). Because the court erred as a matter of law in failing to find claims 1 and 5 of the '969 patent to have been obvious and in finding infringement of those claims, we reverse.

BACKGROUND

Ball Aerosol and Specialty Container, Inc. ("BASC") owns the '969 patent by assignment from former employee Jivan Kumar Kholsa. The '969 patent claims a candle tin with a removable cover that also acts as a base for the candle holder. When a candle holder is placed directly on a table or other surface, the heat of the lit candle can cause scorching or damage to the surface. Putting a candle tin in the configuration claimed in the '969 patent, with the candle holder resting on top of the cover, minimizes this scorching by removing the candle holder from direct contact with the underlying surface. The '969 patent also claims protrusions, or feet, on the closed end of the candle holder that rest on top of the closed end of the cover when it is used as a base, as depicted in the figure below.



'969 patent fig.1B.

In 2003, Limited designed the accused Travel Candle, which is a square-shaped candle tin with a removable cover and four protrusions on the closed end of the candle holder. On October 25, 2004, BASC sued Limited for infringement in the United States District Court for the Eastern District of Michigan. The case was transferred to the Northern District of Illinois on May 31, 2005. BASC ultimately limited its allegations of infringement to claims 1 and 5 of the '969 patent, which read as follows:

1. A candle tin comprising:

a hollow candle holder closed at one end in which a candle is disposed, the candle having a wick for the candle to burn when the wick is lit, the lit candle producing heat a portion of which is transferred through the holder to a surface upon which the candle tin is placed;

a cover sized to fit over the holder and removably placed over an open end of the holder to cover the candle when the candle is not lit, the cover, when removed, being placed upon the surface with the holder being set upon the cover for the cover to support the holder above the surface whereby the heat generated by the burning candle does not damage the surface, the holder and cover being cup shaped with the cover placed upon the surface open end down so a closed end of the cover supports the holder above the surface, a closed end of the holder being adjacent the closed end of the cover; and,

protrusions formed on the closed end of the holder and extending therefrom, the protrusions resting upon the closed end of the cover to seat the holder on the cover.

5. A candle tin comprising:

a cup shaped holder in which a candle is disposed, the candle having a wick for the candle to burn when the wick is lit, the lit candle producing heat a portion of which is transferred through the holder to a surface upon which the candle tin is placed;

a cup shaped cover sized to fit over an open end of the holder and removably placed over the open end of the holder to cover the candle when the candle is not lit, the cover, when removed, being placed upon the surface and the holder being set upon the cover for the cover to support the holder above the surface whereby the heat generated by the burning candle does not damage the surface, the cover being placed upon the surface open end down for the closed end of the cover to support the holder above the surface; and,

protrusions formed on the closed end of the holder and extending therefrom, the protrusions resting upon the closed end of the cover to seat the holder on the cover.

'969 patent col.5 ll.35-56; id. col.6 ll.10-30.

On April 19, 2006, the district court construed the term "to seat" to mean "to either rest on or fit into the cover." Claim Construction Opinion, 2006 WL 1049581, at *2. The parties had disagreed on whether the portion of claims 1 and 5 relating to the protrusions required that they lock in, or engage, the closed end of the cover in some way when the candle tin was configured as described in the claims, i.e., with the candle holder resting on top of the cover. The court reasoned that because not all of the figures in the patent showed the feet on the bottom of the candle holder fitting into recesses in the closed end of the cover when the candle was in this configuration, the term "to seat" did not require an engagement between the holder and the cover.

On June 28, 2006, the district court denied Limited's motion for summary judgment of anticipation because a genuine issue of material fact existed regarding

whether a cover was inherently disclosed in the prior art, specifically in U.S. Patent 6,398,544 ("Wright"). The court also denied Limited's motion for summary judgment of obviousness. The court found that Limited had proven that "all of the elements of claims 1 and 5 in the '969 [p]atent are found in the prior art" encompassed by Wright and U.S. Patent 3,285,694 ("Marchi"). Infringement Opinion, No. 05-CV-3684, slip op. at 11. However, the court rejected Limited's argument—that the motivation to combine was "self-evident" because "the prior art seeks to solve the same problem" of scorching caused by the candle holder—as failing to provide clear and convincing evidence of a motivation to combine the prior art. Id. at 11-12. The court stated that Limited had "simply supplied prior art containing the elements of claims 1 and 5 of the '969 [p]atent and used conclusory statements in lieu of an explanation of the motivation to combine the sources they have alleged." Id. at 12.

In the same decision, the district court granted BASC's motion for summary judgment of infringement. The court stated that the language of claims 1 and 5 supported a finding that the candle tin need only have "a cover that is simply capable of being placed over the open end of the candle holder and also used as a base for the holder, rather than at all times being placed in those positions." Id. at 17.

Two days later, on June 30, 2006, the district court issued a sua sponte order declaring that the '969 patent was "valid" as a matter of law "based upon the reasons stated" for denying Limited's summary judgment motion of invalidity in the Infringement Opinion. Validity Motion, No. 05-CV-3684, slip op. at 1. The court found that "no reasonable trier of fact could find other than that the Plaintiff's patent is valid." Id.

On August 16, 2006, the district court denied a motion by Limited for leave to file

a supplemental motion for summary judgment of indefiniteness. After both parties submitted summary judgment briefing on damages, the court denied the motions. On June 22, 2007, after receiving briefing on the impact of the Supreme Court's decision in KSR International Co. v. Teleflex Inc., 127 S.Ct. 1727 (2007), on the prior ruling of patent validity, the district court reaffirmed its earlier determination that Limited had failed to provide an adequate motivation to combine the prior art. In its docket entry, the court quoted KSR as stating that the analysis of a motivation to combine "should be made explicit." Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc., No. 2:05-CV-3684, slip op. at 1-2 (N.D. Ill. June 22, 2007) (document 191) ("KSR Analysis Order") (quoting KSR, 127 S.Ct. at 1741). Because the district court had based its rejection of Limited's obviousness argument in the Infringement Opinion on a finding that Limited used "conclusory statements," the court reaffirmed its determination that "no reasonable trier of fact could find other than" that the '969 patent was "valid." Id.

On September 4, 2007, the district court granted BASC's motion for summary judgment on damages and determined, also on summary judgment, that Limited had willfully infringed the '969 patent. The court awarded BASC a reasonable royalty and enhanced damages. On March 27, 2008, the court denied Limited's motion for reconsideration in its entirety by again concluding, inter alia, that the court's previous finding of patent validity was a proper application of the clear and convincing standard, and consistent with KSR. The court also found that its finding of willful infringement was consistent with In re Seagate Techology, LLC, 497 F.3d 1360 (Fed. Cir. 2007).

On April 23, 2008, Limited timely appealed the district court's claim construction and grants of summary judgment on the issues of patent validity, infringement, and

damages. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

A.    Validity

1.    Claim Construction

As a preliminary matter, we first determine whether the district court properly construed the term "to seat" to mean "to either rest on or fit into the cover," thus not requiring any engagement between the candle holder and the cover. Claim Construction Opinion, 2006 WL 1049581, at *2. We review claim construction de novo. Phillips v. AWH Corp., 415 F.3d 1303, 1328 (Fed. Cir. 2005) (en banc).

Limited argues that the district court's construction is inconsistent with the text, context, and history of claims 1 and 5. Limited asserts that every figure in the '969 patent shows an engagement between the candle holder and the cover. In response, BASC states that the ordinary and customary meaning of "to seat" is "to rest on." BASC contends that there was no clear disavowal in the '969 patent or its prosecution history of the embodiment shown in figure 1C, which shows the feet merely resting upon the cover. BASC also argues that the principle of claim differentiation dictates the construction given by the district court because claim 2, which is dependent on claim 1, expressly requires engagement with the cover.

We agree with BASC that the district court did not err in construing the term "to seat" as not requiring an engagement between the feet and the cover. The relevant portions of claims 1 and 5 are identical: "protrusions formed on the closed end of the holder and extending therefrom, the protrusions resting upon the closed end of the cover to seat the holder on the cover." '969 patent col.5 ll.54-56; id. col.6 ll.27-30. This

language makes clear that the protrusions, or feet, are what cause the candle holder to be "seat[ed]" on the cover. Thus, Limited's argument that every figure in the '969 patent shows an engagement between the candle <u>holder</u> and the cover misses the point because even if engagement were required, the claim language dictates that the engagement would be between the <u>feet</u> and the cover. Similarly, Limited's argument regarding the prosecution history of the '969 patent is unpersuasive. The language regarding the protrusions was added to claims 1 and 5 to overcome a rejection based on prior art that depicted a candle holder that could lock together with its cover when the cover was used as a base. Nothing in the language added concerning the protrusions indicates that BASC intended the feet to lock into the cover; rather, the language indicates an intent to distinguish BASC's claimed invention from the prior art by the presence of feet on the bottom of the candle holder.

Furthermore, "claims must be read in view of the specification, of which they are a part." <u>Phillips</u>, 415 F.3d at 1315 (internal quotation marks and citation omitted). Figure 1C clearly depicts the feet merely resting atop the cover, in contrast to figure 5B, which depicts the feet locking into recesses in the cover. In addition, claim 2 specifically requires some engagement between the feet and a recess in the cover. <u>See</u> '969 patent col.5 l.57-col.6 l.2 ("The candle tin of claim 1 in which the closed end of the cover has a recess formed therein for seating the protrusions, there being a gap formed between the cover and holder when the holder is seated on the cover."). Thus, because the specification illustrates feet both resting on the cover and locking into recesses in the cover, and also in light of the prosecution history, we conclude that the correct construction of the term "to seat" does not require an engagement between the feet and

the cover.

    2.    <u>Obviousness</u>

On appeal, Limited argues that the district court erred in declaring, <u>sua</u> <u>sponte</u>, that the '969 patent was "valid."  Limited claims that BASC never moved for a determination of validity, nor did the court put Limited on notice that the patent might be declared "valid" without trial.  As a result, Limited argues, the court precluded Limited from presenting its pled defense of indefiniteness and having factual questions of inherency relating to its anticipation defense decided by a jury.

Substantively, Limited asserts that claims 1 and 5 of the '969 patent would have been obvious under <u>KSR</u>.  Limited states that all the claim limitations of claims 1 and 5 and information as to how to configure these elements are in the prior art.  Limited argues that the '969 patent would have been obvious to a person of ordinary skill in the art attempting to address the problem of scorching.  Thus, Limited contends that under the reasoning of <u>KSR</u> with respect to any motivation to combine, the district court erred as a matter of law in failing to find claims 1 and 5 of the '969 patent obvious.

BASC responds that granting summary judgment <u>sua</u> <u>sponte</u> is within the district court's discretion and that the court recognized that BASC had simply overlooked formally moving for a validity determination.  BASC argues that Limited was on notice and had an opportunity to respond regarding the issue of validity because its summary judgment motion for a declaration of invalidity was under consideration.  Furthermore, BASC asserts that even if notice had been lacking, Limited suffered no prejudice because it failed to present any additional evidence of a viable claim for invalidity.  BASC also states that the court properly exercised its discretion in determining that

Limited had waived its indefiniteness defense because of evasive and untimely filings and notes that Limited had argued that there was no genuine issue of material fact, including any relating to inherency, in its failed summary judgment motion on anticipation.

With respect to obviousness, BASC argues that the district court applied <u>KSR</u> correctly. BASC asserts that the cited references provided other solutions for the scorching problem and thus taught away from combining references in the manner described in the '969 patent. BASC further contends that the commercial success of its candle tin and the fact that no prior art contained the claimed limitations for the required shapes and configuration of the candle tin further support a finding of nonobviousness.

"We review summary judgment decisions <u>de novo</u>, reapplying the standard used by the district court." <u>Freedman Seating Co. v. Am. Seating Co.</u>, 420 F.3d 1350, 1356 (Fed. Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "On summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion . . . with doubts resolved in favor of the nonmovant." <u>Crown Operations Int'l, Ltd. v. Solutia Inc.</u>, 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citations omitted).

Obviousness under 35 U.S.C. § 103 is a question of law, with underlying factual considerations regarding (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations. <u>Graham v. John Deere Co.</u>, 383 U.S. 1,

17-18 (1966). A claimed invention is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (2000).

We agree with Limited that claims 1 and 5 of the '969 patent are invalid for obviousness based on Wright and Marchi.[*] Because we conclude that the district court erred substantively in failing to grant summary judgment on this basis, we do not address the procedural propriety of the district court's <u>sua</u> <u>sponte</u> order.

The disagreement between the parties—and the sole basis for the district court's denial of Limited's motion for summary judgment of obviousness—is whether a motivation to combine the prior art existed. We think there clearly was such a motivation. As explained in <u>KSR</u>, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." 127 S.Ct. at 1742. The Court stated that if a combination of known elements was "obvious to try" to address a recognized problem, the combination may have been obvious under § 103. <u>Id.</u>

Here, it is undisputed that the prior art discloses all the limitations of the claims. Most relevant to our analysis, the Wright patent discloses "protuberances" or "bumps"

---

[*] Because we find claims 1 and 5 of the '969 patent to have been obvious based on Wright and Marchi alone, we do not address the other prior art discussed by the parties and by the district court.

on the bottom of a candle can, Wright col.3 ll.35-36, and the Marchi patent discloses a combination cover-stand and includes a figure showing the invention configured with the candle holder resting on top of the stand.



Marchi figs.1 & 2. It is also undisputed that the problem of scorching caused by the bottoms of hot candle holders was known and had been addressed by others by the time Kholsa began to work on the '969 patent. See, e.g., Wright col.1 ll.41-48 ("The downside of using metal cans to accommodate burning candles is well known and derives from the fact that the thermally conductive nature of metal frequently allows transmission of harmful quantities of heat from not only the flame but from the heated and liquefied candle wax which heat passes through the can base to a support surface which may be damaged by the heat."); Marchi col.1 ll.39-43 (When "the candle burns

near the bottom of the vessel, the vessel walls grow hot and there is a danger of the heat scorching or marring wood or painted surfaces on which the vessel may have been set."). Finally, BASC did not dispute the district court's adoption of Limited's argument that because the "technology is simple and easily understandable," the level of ordinary skill in the art was that of an ordinary layman of average intelligence. Infringement Opinion, No. 05-CV-3684, slip op. at 10 (citing Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1573 (Fed. Cir. 1984)).

The Supreme Court in KSR stated that "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." 127 S.Ct. at 1740. That is clearly the situation here. The combination of putting feet on the bottom of the candle holder and using the cover as a base for the candle holder was a predictable variation. Both Marchi and Wright involve raising the bottom of a candle holder away from the supporting surface to avoid or minimize scorching. In fact, the parties agreed that Marchi discloses a candle container with a cover that was designed to be used as a base to prevent heat damage from the candle holder when the candle is lit. Similarly, Wright discloses "bumps that further space the candle can from the surface that supports the candle can" and "diminish the area of contact." Wright col.3 ll.36-37; id. col.5 l.15. The combination of a cover-stand and feet on the bottom of the candle holder was obvious to try in an effort to minimize scorching, as the combination would further raise the bottom of the candle holder above the supporting surface. The resulting, and desired, decreased heat transfer between the candle holder and the supporting surface from the combination would have been entirely predictable and grounded in common sense.

In addition, the district court erred in finding a requirement in <u>KSR</u> of an explicit motivation to combine. The court faulted Limited for using what the court deemed "conclusory statements in lieu of an explanation of a motivation to combine." <u>KSR</u> <u>Analysis Order</u>, No. 2:05-CV-3684, slip op. at 2 (quoting the <u>Infringement Opinion</u>). Although the court quoted <u>KSR</u> at length, it misconstrued the language that the motivation to combine analysis "should be made explicit." <u>Id.</u> at 1-2. A broader look at this portion of <u>KSR</u> sheds light on the proper inquiry:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue. <u>To facilitate review, this analysis should be made explicit</u>. See <u>In re Kahn</u>, 441 F.3d 977, 988 (C.A.Fed.2006) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness"). <u>As our precedents make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.</u>

127 S.Ct. at 1740-41 (emphases added). Thus, the analysis that "should be made explicit" refers not to the teachings in the prior art of a motivation to combine, but to the court's analysis. Here, all the limitations of claims 1 and 5 of the '969 patent were in the prior art, as was the claimed configuration and a known problem of scorching. <u>KSR</u> thus compels the grant of summary judgment of obviousness. 127 S.Ct. at 1745-46 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."). Under the flexible inquiry set forth by the Supreme Court, the district court therefore erred by

failing to take account of "the inferences and creative steps," or even routine steps, that an inventor would employ and by failing to find a motivation to combine related pieces from the prior art.

Finally, BASC asserts that the secondary consideration of commercial success supports the district court's conclusion of nonobviousness. We disagree. The minimal indications of commercial success argued by BASC do not outweigh the clear indication of obviousness apparent from the prior art. See Leapfrog Enters., Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007).

Because BASC alleged infringement of only claims 1 and 5, those are the only claims in issue, and we render no judgment on any other claims. To the extent that the district court declared the patent "valid," or all the claims of the patent "valid," we vacate that declaration. Aside from the fact that courts do not declare patents to be valid, and only declare that they have not been proved to be invalid, if such is the case, courts should not adjudicate claims not put in issue by the parties, unless a holding with respect to contested claims necessarily implicates others, a situation that has not been argued to be the case here.

We therefore reverse the district court's denial of Limited's motion for summary judgment of invalidity of claims 1 and 5 for obviousness and thus vacate the court's subsequent holding that the '969 patent was "valid" as a matter of law. We remand to the court with instructions to grant summary judgment invalidating claims 1 and 5 of the '969 patent for obviousness.

### 3. Motion to Strike

On November 14, 2008, BASC moved to strike portions of Limited's reply brief

filed in this court. Because we do not rely upon the arguments made by Limited in that section of its reply brief, BASC's motion is denied as moot.

B.    Infringement

We next turn to the district court's grant of summary judgment of infringement. The district court found infringement because the accused Travel Candle "is reasonably capable of being configured in such a way that its holder is supported by the cover when the cover is placed open end down on a surface." Infringement Opinion, No. 05-CV-3684, slip op. at 19. On appeal, Limited argues that the court erred in reading the claims to cover any product "reasonably capable" of being configured in the same manner. Limited asserts that because claims 1 and 5 only read on a candle tin actually placed in the claimed configuration and because there is no evidence of the Travel Candle ever being so configured, Limited is entitled to a summary judgment of noninfringement. In response, BASC argues that claims 1 and 5 are apparatus, not method, claims. BASC contends that an apparatus patent claim with functional elements is infringed if the accused product is reasonably capable of being used without substantial modification in the manner recited in the claim.

We agree with Limited that the district court erred in granting summary judgment of infringement of claims 1 and 5. The claim language clearly specifies a particular configuration in which the protrusions must be "resting upon" the cover. '969 patent col.5 l.55; id. col.6 l.29. Thus, BASC's reliance on cases that found infringement by accused products that were reasonably capable of operating in an infringing manner is misplaced, since that line of cases is relevant only to claim language that specifies that the claim is drawn to capability. See Fantasy Sports Props., Inc. v. Sportsline.com, Inc.,

287 F.3d 1108, 1117-18 (Fed. Cir. 2002) (clarifying that infringement is not proven <u>per se</u> by a finding that an accused product is merely capable of infringing because "in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred").  Here, the language of claims 1 and 5 of the '969 patent specifies that infringement occurs only if the accused product is configured with the cover being used as a base underneath a candle holder with feet.  That the Travel Candle was reasonably capable of being put into the claimed configuration is insufficient for a finding of infringement.  <u>See</u> <u>Acco Brands, Inc. v. ABA Locks Mfr. Co.</u>, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (rejecting a "reasonably capable" standard for direct infringement).  Rather, infringement requires "specific instances of direct infringement or that the accused device necessarily infringes the patent in suit."  <u>Id.</u> BASC concedes that it has no proof that the Travel Candle was ever placed in the infringing configuration, and it is clear that the Travel Candle does not necessarily have to be placed in the infringing configuration.  We thus reverse the district court's finding of infringement, and we remand to the court with instructions to issue a summary judgment of noninfringement.

Because we reverse the district court on the issues of patent validity and infringement, the parties' remaining arguments need not be considered.  In addition, we necessarily vacate the holdings on damages and willfulness.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand to the court with instructions to grant summary judgment that claims 1 and 5 are invalid and not infringed.

REVERSED, VACATED, AND REMANDED