NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

_____

**STONE STRONG, LLC,**
*Plaintiff-Appellee,*

**v.**

**DEL ZOTTO PRODUCTS OF FLORIDA, INC.,**
*Defendant-Appellant,*

**and**

**DOES 1-10, INCLUSIVE,**
*Defendants.*

_____

2011-1156

_____

Appeal from the United States District Court for the Middle District of Florida in case no. 08-CV-0503, Judge Wm. Terrell Hodges.

_____

Decided: October 17, 2011

_____

JOSEPH J. WEISSMAN, Johnson, Pope, Bokor, of Tampa, Florida, argued for plaintiff-appellee.

JACKSON O. BROWNLEE and AMBER N. DAVIS, Beusse Wolter Sanks Mora & Maire, P.A., of Orlando, Florida, argued for defendant-appellant.

———————————

Before DYK, CLEVENGER, and REYNA, *Circuit Judges*.

DYK, *Circuit Judge*.

Del Zotto Products of Florida, Inc. ("Del Zotto") appeals the judgment of the United States District Court for the Middle District of Florida in favor of Stone Strong, LLC ("Stone Strong"). After a bench trial the district court concluded that the asserted claims of U.S. Patent Nos. 6,796,098 (the "'098 patent") and 7,073,304 (the "'304 patent) (collectively, the "patents in suit") were not invalid and were infringed by Del Zotto's Gold Rock block. *Stone Strong, LLC v. Del Zotto Prods. of Fla., Inc.*, No. 08-CV-0503, 2010 WL 4259371, at *3–4 (M.D. Fla. Oct. 25, 2010) ("*Memorandum Opinion*"). Because we conclude that the asserted claims of the patents in suit would have been obvious as a matter of law to a person of ordinary skill in the art at the time of filing, we *reverse.*

## BACKGROUND

Stone Strong is a Nebraska limited liability corporation which licenses its Stone Strong retaining wall blocks and retaining wall systems. Those blocks and systems embody the patents in suit, which are owned by Stone Strong. Del Zotto is a Florida corporation that manufactures pre-cast concrete products, forms, and equipment.

The claims of Stone Strong's patents—the '098 and '304 patents—cover pre-cast concrete blocks and a system and method for making pre-cast concrete blocks for use in constructing retaining walls. The '098 patent, issued on September 28, 2004, contains three independent claims—

claims 1, 7, and 13—directed to the block itself, independent claim 14 directed to the wall system, and independent claim 22 directed to a method for building a wall. The '304 patent, a continuation-in-part of the '098 patent, issued on July 11, 2006, and has seven independent claims, three directed to a corner block and the other four describing a wall system and a method for building a block wall involving corner blocks and regular blocks. As best we can determine, only claims 1, 7, 13, and 22 of the '098 patent and claims 1 and 11 of the '304 patent were asserted in this case.

Independent claim 1 of the '098 patent is representative of the blocks claimed in both patents in suit. It claims a block with a front surface, first and second side surfaces, a top surface, a bottom surface, and a back surface, where

> the top surface includes at least *one alignment device*, each alignment device comprising a device for lifting the block when the block is being placed; [and]

> . . . the bottom surface including at least one recess positioned to receive at least one alignment device of a previously-placed block *to align the block with respect to the previously-placed block . . . .*

'098 Patent col.13 ll.46–55 (emphasis added).



FIG. 3

*Id.* fig. 3.

As illustrated in Figure 3 above, the lift loop or pickup bar (170) protrudes from the top surface (150) of the block (100). The lift loop, referred to as the "alignment device" or "lift and alignment device" in the claims, fits into a recess (162) in the bottom surface (160) of another block. This device "fulfill[s] a dual function: first, it enables the lifting and placement of the block in the wall by a crane or similar machine; and, second, it enables the alignment of the blocks one upon another as the building of the wall proceeds." *Memorandum Opinion*, 2010 WL 4259371, at *1. Both parties agree that the novelty of the invention is primarily the combination of a lifting device (such as a lift-loop) with an alignment device so that the lifting device serves both a lifting function *and* an alignment function. The best mode portion of the specification describes the patented device as follows, with reference to Figure 3 above:

> The semicircular shape of protruding portion of the lift and alignment rings 170 shown in FIG. 3 and the shape of the alignment channels 162 pro-

vide a mechanism for easily aligning a block on top of a previously-laid block. The block 100 of FIG. 1 is preferably heavy enough that it will typically be set in place using suitable equipment, such as a crane. The lift and alignment rings 170 provide easy loops for attaching hooks to lift the block 100. As the block is lowered into place on previously-set blocks, the shape of the alignment channel 162 has an aligning effect on the block as it is lowered onto the lift and alignment rings 170 of one or more previously-laid blocks. If the block is slightly too far to the front or back, the weight of the block will cause the block to shift as it is lowered until the lift and alignment rings 170 lie within the alignment channels 162. This is how the lift and alignment rings 170 perform their aligning function. The lift and alignment rings thus provide a dual function. They provide lift hooks that allow lifting the block and placing it in a wall. They also provide an alignment mechanism to align the alignment channel of a subsequently-placed block with one or more lift and alignment devices of one or more blocks that have been previously placed. This dual function for lift and alignment rings 170 provide significant advantages over known building blocks.

'098 Patent col.4 l.55–col.5 l.12.

Stone Strong first noticed Del Zotto's accused block (the "Gold Rock block") at a trade show in February 2008. Stone Strong subsequently received a high priority e-mail from one of its licensees that included a Del Zotto brochure advertising forms for making the accused Gold Rock retention block. Stone Strong's counsel wrote Del Zotto on March 3, 2008, requesting that Del Zotto immediately cease and desist the advertising, production, and sale of

its form, alleging that the form produced blocks that infringed one or both of Stone Strong's patents. Del Zotto responded, denying that its forms produced infringing retention blocks and indicating: "It is our intention to continue to market and sell this block form."

On November 28, 2008, Stone Strong filed suit against Del Zotto in the United States District Court for the Middle District of Florida, apparently alleging that Del Zotto both directly and indirectly infringed claims 1, 7, 13, and 22 of the '098 patent and claims 1 and 11 of the '304 patent. Del Zotto responded by denying infringement and requesting a declaration of invalidity and/or unenforceability of the patents in suit. Stone Strong later determined that it would seek only injunctive relief.

A bench trial took place before the district court on September 27–29, 2010. At trial, Del Zotto argued that it did not infringe the claims either directly or indirectly and presented evidence that the claims were anticipated under 35 U.S.C. § 102 or, in the alternative, were obvious under § 103, in light of two patents: U.S. Patent No. 5,651,642 (the "'642 patent"), issued July 29, 1997, and U.S. Patent No. 6,557,818 (the "'818 patent"), issued May 6, 2003 (collectively, the "prior art patents").

On October 25, 2010, the district court issued its Memorandum Opinion, finding that Del Zotto literally infringed, infringed under the doctrine of equivalents, and indirectly infringed the claims of the patents in suit. *Memorandum Opinion*, 2010 WL 4259371, at *3 & n.10. With little elaboration of its reasoning, the court concluded that Del Zotto had not established either anticipation or obviousness through clear and convincing evidence. *Id.* at *4. On November 19, 2010, the district court entered the Corrected Final Injunctive Decree.

Del Zotto timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

On appeal, we need address only the question of obviousness since we conclude that the asserted claims of both patents are obvious as a matter of law.

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2006). "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009).

I

In determining whether a patent is invalid for obviousness, "the first step is to determine the meaning and scope of each claim in suit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (internal quotation marks omitted) (quoting *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)). Patent claim construction is an issue of law, which this Court reviews without deference. *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1325 (Fed. Cir. 2009). Here, the parties disagree as to the meaning and scope of the claims of the patents in suit.

The primary claim construction disagreement between the parties is the proper interpretation of the "alignment device" limitation in the asserted claims. Each of the asserted independent claims requires a "lift and alignment device" (or in some cases, simply an "alignment device") to "align" a subsequently-placed block

with respect to the first block.  '098 Patent cls. 1, 7, 13, 14 and 22; '304 Patent cls. 1, 9, 10, 11, 21, 22 and 23.

Stone Strong argued in the district court that the recess on the bottom of the block can serve an alignment function regardless of its size in relation to the lift hooks, so long as it is shorter than the width of the block from the face shell to the rear shell.  Accordingly, as Stone Strong's expert testified, "so long as the alignment loop ultimately falls within that recess in the bottom of the block, . . . we've satisfied this description and definition of 'align.'"  J.A. 711.  On the other hand, Del Zotto argues that the "the lifting devices must substantially fill the recess ('alignment channel' . . . ) in order for the block to come to rest in an aligned state."  Appellant Br. 16.

We largely agree with Del Zotto's construction of the alignment limitation.  Insofar as alignment is concerned, the object of Stone Strong's invention was to achieve alignment of retaining wall blocks, including setback, without requiring manual alignment as the block is lowered or adjustment after it has been placed.  At the time of the invention, the existing art disclosed "relatively small blocks that a construction worker must manually lift and put in place."  '098 Patent col.1 ll.33–34.  There was a need for "a large block that is especially well-suited for retaining walls that has a large surface, and that may be lifted into place using a crane or other suitable equipment . . . . This allows a wall to be quickly and efficiently constructed using much less skilled labor."  '098 Patent col.1 ll.35–40.  Along these lines, Stone Strong's own expert testified that the purpose of the Stone Strong system was to make "it much more efficient to install, so every time the contractor picks that thing up and swings it in place and sets it down, it's aligned."  J.A. 700.

Stone Strong's contention that so long as the lifting hooks end up within the recess, they have acted as an aid in alignment is inconsistent with the object of its invention's alignment function. Given the object of the invention to achieve alignment of retaining wall blocks (including necessary setback) without requiring manual alignment as the block is lowered or after it has been lowered in place, the alignment function is accomplished only if no further manual adjustment is required. This function cannot be served if the recess is nearly as large as the width of the block itself, as Stone Strong contends. With such a large recess, there would be too much play between the rings and the outer edges of the recess to automatically align the block with respect to another. With a recess nearly as large as the width of the block, the block could end up shifted forward with the rings abutting the back edge of the recess, shifted back with the rings abutting the front edge of the recess, or anywhere in between. At the extreme the top block would receive little or no support from the bottom block. This arrangement does not guarantee proper alignment. Instead, it would require further manual alignment once placed "to align the block with respect to the previously-placed block," '098 Patent col.13 ll.54–55, thus frustrating the object of the invention.

We note that the patent's preferred embodiment discloses that "the radius of the outside of the lift and alignment devices 170 is preferably 4 inches (10.2 cm), and the alignment channel 162 is configured to receive a lift and alignment ring with a radius of 4.5 inches (11.4 cm)." '098 Patent col.4 ll.36–40. These disclosures are consistent with the object of the invention and our interpretation of the alignment limitation.

We therefore construe the alignment limitation to require that when the lift loops of one block are inserted

into the recess on the bottom of another, there is not enough play to allow the blocks to be misaligned without further manual adjustment.

## II

In light of this claim construction we consider whether the asserted claims would have been obvious in light of the prior art. *Amazon.com*, 239 F.3d at 1351. At trial, both sides presented expert testimony as to obviousness. This testimony, however, was largely conclusory and so truncated as to be unhelpful. Nevertheless, because the technology at issue is "easily understandable," expert testimony is not necessary. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010) (internal quotation marks omitted). The Supreme Court in *KSR International Co. v. Teleflex Inc.* requires an "expansive and flexible approach" in determining whether a patented invention was obvious at the time it was made. 550 U.S. 398, 415 (2007). In particular, the Court emphasized the role of "common sense": "[r]igid preventative rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." *Id.* at 421.

Following *KSR* we held that the legal determination of obviousness, especially where the technology at issue is "easily understandable," "may include recourse to logic, judgment, and common sense, in lieu of expert testimony." *Wyers*, 616 F.3d at 1239, 1242. "Thus, in appropriate cases, the ultimate inference as to the existence of a motivation to combine references may boil down to a question of 'common sense.'" *Id.* at 1240.

In particular, our cases emphasize that "where all of the limitations of the patent were present in the prior art references, and the invention was addressed to a 'known problem,' '*KSR* . . . compels [a determination of] obvious-

ness.'" *Wyers*, 616 F.3d at 1240 (citing *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009)). As *KSR* stated,

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

550 U.S. at 421.

In the present case, all of the relevant elements of the claimed invention, the lifting device and the alignment mechanism, existed in the prior art. Both prior art patents disclose a lifting device and an alignment mechanism. Notably, the prior art patents, the '642 and '818 patents, were not before the examiner during prosecution, and thus, under *KSR*, "the rationale underlying the presumption [of validity] . . . seems much diminished." 550 U.S. at 426; *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2250–51 (2011). The '818 patent discloses a rod, recessed and embedded in the concrete block, "for lifting and positioning the blocks . . . when constructing a retaining wall." '818 Patent col.4 ll.45–50. It also discloses a heavy wire or rebar lifting loop extending from the rear side of the block used to lift the block from the form in which it was cast. '818 Patent col.4 ll.38–43. The patent also discloses an alignment mechanism in the form of projections or knobs extending above the top of the block with a corresponding rabbet or groove on the bottom, such that "[w]hen two blocks 10 are stacked, a knob 18 on a lower one of the blocks extends into the groove 17

on the adjacent upper block 10 to align the blocks." '818 Patent col.4 ll.4–11.

Likewise, the '642 patent discloses a lifting eye formed from a looped cable which "allows the block to be engaged by a lifting device . . . to facilitate movement and placement." '642 Patent col.3 ll.50–57. The lifting eye can either extend above the top of the block or be configured to be essentially flush with the top so it "does not interfere with the structural mating of the blocks." '642 Patent col.3 ll.61–64. The patent also discloses connector pins with corresponding connector sockets on the bottom of the block designed to receive the connector pins. '642 Patent col.3 ll.40–49. Notably, as seen in Figure 4 below, the lifting eye (46) ("lifting device") of the patent can project from a well within a connector pin (28, 34) ("alignment mechanism") in the block.



With both of these limitations existing in the prior art for the same purposes, the only claim to novelty is the combination of the two into a single device serving both

functions. Stone Strong makes no claim that additional features in claims other than claim 1 of the '098 patent render those nonobvious. The only question for us, then, is whether it would have been obvious for one of skill in the art to combine the lifting device and alignment mechanism of the prior art patents into a single device serving both functions.

We conclude that, because the '098 and '304 patents represent no more than the predictable use of prior art elements to address a known problem, their claims are obvious as a matter of law. *See KSR*, 550 U.S. at 417, 421. Stone Strong's own expert testified that, at the time the invention was made, there was a known problem with lifting devices interfering with retaining wall blocks:

> These lifting devices were treated as something that were in the way. You had to get them out of the way somehow, so they were all recessed and hidden away. The ones in the back of the block that were used to pull the blocks out of the form were typically torched off just to get rid of them, and they were treated as such, that they were something in the way.

J.A. 702.

Accordingly, it would be natural that one of skill in the art would consider all available solutions to address the problem presented by lifting devices. Being a simple mechanical invention, there were only a number of possible techniques to avoid interference between the lifting devices and subsequently-placed blocks. In lieu of hiding the lifting device within a recess (as was done in the '642 patent), it would have been obvious for one of ordinary skill in the art to consider using an exposed lifting device as an alignment mechanism. This solution would be especially apparent to one of skill in the art based on Fig.

4 of the '642 Patent, which already depicts a lifting device housed inside of the alignment mechanism. A skilled artisan would also have perceived a reasonable expectation of success as a result of combining these two elements of the prior art. *Wyers*, 616 F.3d at 1242 (citing *In re O'Farrell*, 853 F.2d 894, 904 (Fed. Cir. 1988) ("For obviousness under § 103, all that is required is a reasonable expectation of success.")). Therefore, it would have been a matter of common sense to combine the lifting device and the alignment mechanism. *See Wyers*, 616 F.3d at 1241 ("It is simply a matter of common sense that the sleeve used in Down, in a towing attachment quite similar to the hitch receiver/tow bar arrangement, could be combined with a barbell-shaped hitch pin lock in order to address the known problem of different aperture sizes in standard hitch receivers and the shelf-space problem experienced by retailers.").

At trial, as a secondary consideration of nonobviousness, Stone Strong presented evidence that Del Zotto had intentionally copied aspects of its marketing brochure for its patented block system. However, the Del Zotto Gold Rock block is materially different from patented invention, as reflected in the Stone Strong block. The location of the two webs connecting the front and back surfaces of the blocks is different, the recesses on the bottom of the blocks are different in both size and location, and the front of the Stone Strong block is much thicker than the back whereas both front and back walls of the Gold Rock block are of equal thickness. In any event, "secondary considerations of nonobviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Wyers*, 616 F.3d at 1246. "[W]here the inventions represent[] no more than 'the predictable use of prior art elements according to their established functions,' the secondary considerations are inadequate to establish

nonobviousness as a matter of law." *Id.* (quoting *KSR*, 550 U.S. at 417). The secondary consideration of copying, even if established by Stone Strong at trial, is insufficient to overcome the strong prima facie case of obviousness discussed above.

We therefore reverse the trial court's determination and hold that the asserted claims of the '098 and '304 patents are obvious as a matter of law.

## REVERSED

### COSTS

No costs.