PER CURIAM.
I/P Engine, Inc. (“I/P Engine”) brought an action against AOL Inc., Google Inc. (“Google”), IAC Search & Media, Inc., Gannett Company, Inc., and Target Corporation (collectively, the “Google Defendants”) alleging infringement of U.S. Patent Nos. 6,314,420 (the “'420 patent”) and 6,775,664 (the “'664 patent”). A jury returned a verdict finding that all asserted claims were infringed and not anticipated. J.A. 4163-73. The district court then determined that the asserted claims were not obvious and entered judgment in I/P Engine’s favor. See I/P Engine, Inc. v. AOL Inc., No. 11-CV-0512, 2012 U.S. Dist. LEXIS 166555 (E.D.Va. Nov. 20, 2012) (“Non-Obviousness Order ”). Because the asserted claims of the '420 and '664 patents are invalid for obviousness, we reverse.
BACKGROUND
The '420 and '664 patents both claim priority to the same parent patent, U.S. Patent No. 5,867,799. They relate to a method for filtering Internet search results that utilizes both content-based and collaborative filtering. See '420 patent col.l 11.10-16, col.2 11.20-26; '664 patent col.23 11.29 — 44.[1] Content-based filtering is a technique for determining relevance by extracting features such as text from an information item. '420 patent col.4 11.22-26; see also J.A. 487. By contrast, collaborative filtering assesses relevance based on feedback from other users — it looks to what items “other users with similar interests or needs found to be relevant.” '420 patent col.4 11.28-29; see also J.A. 487. The asserted patents describe a system “wherein a search engine operates with *984 collaborative and content-based filtering to provide better search responses to user queries.” '420 patent col.l 11.14-16. Specifically, the asserted claims describe a filter system that combines content and collaborative data in filtering each “informon”— or information item — for relevance to a user’s query.[2] Asserted claim 10 of the '420 patent recites:
A search engine system comprising: a system for scanning a network to make a demand search for informons relevant to a query from an individual user; a content-based filter system for receiving the informons from the scanning system and for filtering the informons on the basis of applicable content profile data for relevance to the query; and a feedback system for receiving collaborative feedback data from system users relative to informons considered by such users; the filter system combining pertaining feedback data from the feedback system with the content profile data in filtering each informon for relevance to the query.
Id. col.28 11.1-15; see also id. col.29 11.32— 44.
Asserted claim 1 of the '664 patent provides:
A search system comprising: a scanning system for searching for information relevant to a query associated with a first user in a plurality of users; a feedback system for receiving information found to be relevant to the query by other users; and a content-based filter system for combining the information from the feedback system with the information from the scanning system and for filtering the combined information for relevance to at least one of the query and the first user.
'664 patent col.2711.27-37.
Claim 26 of the '664 patent is similar to claim 1, but cast as a method claim:
A method for obtaining information relevant to a first user comprising: searching for information relevant to a query associated with a first user in a plurality of users; receiving information found to be relevant to the query by other users; combining the information found to be relevant to the query by other users with the searched information; and content-based filtering the combined information for relevance to at least one of the query and the first user.
Id. col.28 11.56-65.
On September 15, 2011, IP/Engine[3] filed a complaint in the United States District Court for the Eastern District of Virginia alleging that Google’s AdWords, AdSense for Search, and AdSense for Mobile Search systems, which display advertisements on web pages, infringed claims 10, 14, 15, 25, 27, and 28 of the '420 patent and claims 1, 5, 6, 21, 22, 26, 28, and 38 of the '664 patent. See Claim Construction Order, 874 F.Supp.2d at 514-15. On December 5, 2011, the Google Defendants filed counterclaims, seeking declaratory judgments of noninfringement and invalidity of both the '420 and '664 patents. Id. at 514.
Following a Markman hearing, the district court construed disputed claim terms. The court concluded that: (1) the term *985 “collaborative feedback data” refers to “data from system users regarding what informons such users found to be relevant”; (2) the term “scanning a network” means “looking for or examining items in a network”; and (3) the term “demand search” refers to “a single search engine query performed upon a user request.” Id. at 525 (internal quotation marks omitted).
During a twelve-day trial, the Google Defendants pointed to numerous prior art references to support their contention that the claims of the '420 and '664 patents were invalid as anticipated and obvious. In particular, they argued that U.S. Patent No. 6,006,222 (“Culliss”) anticipated the asserted claims, and that those claims were obvious in view of: (1) U.S. Patent No. 6,202,058 (“Rose”); (2) Yezdezard Z. Lashkari, Feature Guided Automated Collaborative Filtering (July 25, 1995) (M.S. thesis, Massachusetts Institute of Technology) (“WebHound”); and (8) Marko Bala-banovic & Yoav Shoham, Content-Based, Collaborative Recommendation, 40 Comms. of the ACM 66 (1997) (“Fab”).
The jury returned a verdict on November 6, 2012, finding that the Google Defendants had infringed all asserted claims and awarding damages of $S0,496,155.[4] J.A. 4173. The jury also found that the asserted claims were not anticipated, and answered a special verdict form on factual issues pertaining to the obviousness inquiry. J.A. 4169-72. Specifically, the jury found that “Rose, [WebHound] and Fab[-] were profile systems that did not disclose a tightly integrated search system, and could not filter information relevant to the query.” J.A. 4170, 4171-72.
On November 20, 2012, the district court ruled that the Google Defendants had “failed to prove, by clear and convincing evidence, that the '420 Patent or the '664 Patent [was] obvious.” Non-Obviousness Order, 2012 U.S. Dist. LEXIS 166555, at *9. The district court further determined that the equitable doctrine of laches barred I/P Engine from recovering damages for any infringement occurring prior to September 15, 2011, the date of its complaint. I/P Engine, Inc. v. AOL Inc., 915 F.Supp.2d 736, 746-49 (E.D.Va.2012). The court explained that I/P Engine “had constructive notice that the Google Ad-words system potentially infringed its patents as of July 2005 and [yet] failed to undertake any reasonable investigation to further determine if infringement was occurring.” Id. at 744. The court stated, moreover, that “[a]lthough Congress is best left to consider the merits of nonpracticing patent entities in our patent system, the dilatory nature of [I/P Engine’s] suit is precisely why the doctrine of laches has been applied to patent law.” Id. at 748.
On December 18, 2012, the Google Defendants filed motions for a new trial and for judgment as a matter of law on non-infringement, invalidity, and damages. J.A. 4252-381. I/P Engine also filed post-trial motions, arguing that the district court erred in applying the doctrine of laches to preclude recovery of damages for infringement in the period prior to September 15, 2011. J.A. 4433, 4550-56. All of these motions were denied by the district court. J.A. 59-67.
The Google Defendants then filed a timely appeal with this court. They argue that: (1) the infringement determination should be set aside because the accused systems do not meet claim limitations which require “combining” content data with feedback data and filtering “the combined information”; (2) the accused systems do not meet the limitation contained *986 in claim 10 of the '420 patent requiring a “demand search”; (3) I/P Engine improperly relied on marketing documents, rather than source code, in attempting to establish infringement and misled the jury by insinuating that Google had “copied” the system claimed in I/P Engine’s patents; (4) the district court erred as a matter of law in finding the asserted claims non-obvious; (5) the asserted claims are invalid as anticipated because Culliss discloses filtering Internet articles based on scores that combine both content and collaborative feedback data; and (6) I/P Engine failed to introduce any credible evidence of damages in the period following the filing of its complaint. I/P Engine filed a cross-appeal in which it argues that the district court erred in applying the doctrine of laches to bar recovery for infringement occurring prior to September 15, 2011. I/P Engine further contends that even if laches does apply, it is entitled to damages of more than $100 million for infringement occurring after the date it filed its complaint. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
Discussion
I. Standard of Review
“Whether the subject matter of a patent is obvious is a question of law and is reviewed de novo.” Procter & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 993 (Fed.Cir.2009); see PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1359 (Fed.Cir.2007). The factual findings underlying an obviousness determination include: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the pri- or art; (3) the level of ordinary skill in the art; and (4) any objective indicia of non-obviousness. See Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).
I. The Obviousness Determination
The Google Defendants argue that I/P Engine’s claimed invention is obvious as a matter of law because it simply combines content-based and collaborative filtering, two information filtering methods that were well-known in the art. They assert, moreover, that the prior art contained explicit statements describing the advantages of combining these two filtering techniques, and that it would have been obvious to include a user’s query in the filtering process. See Br. of Defendants-Appellants at 35-38.
We agree and hold that no reasonable jury could conclude otherwise. The asserted claims describe a system that combines content and collaborative data in filtering each “informon” — or information item — for relevance to an individual user’s search query. '420 patent col.28 11.1-15; '664 patent col.27 11.27-37. As the asserted patents themselves acknowledge, however, search engines, content-based filtering, and collaborative filtering were all well-known in the art at the time of the claimed invention. See '420 patent col.l II.2CM5. The record is replete, moreover, with prior art references recognizing that content-based and collaborative filtering are complimentary techniques that can be effectively combined. The WebHound reference explains that “content-based and automated collaborative filtering are complementary techniques, and the combination of [automated collaborative filtering] with some easily extractable features of documents is a powerful information filtering technique for complex information spaces.” J.A. 5427. The Fab reference likewise notes that “[o]nline readers are in need of tools to help them cope with the mass of content available on the WorldWide Web,” and explains that “[b]y combining both collaborative and content- *987 based filtering systems,” many of the weaknesses in each approach can be eliminated. J.A. 5511. Similarly, the Rose patent, which was filed in 1994 by engineers at Apple Computer, Inc., states that “[t]he prediction of relevance [to a user’s interests] is carried out by combining data pertaining to the content of each item of information with other data regarding correlations of interests between users.” J.A. 5414. These references, individually and collectively, teach the clear advantages of combining content-based and collaborative filtering.[5]
On appeal, I/P Engine does not dispute that the prior art disclosed hybrid content-based and collaborative filtering. It contends, however, that it would not have been obvious to a person of ordinary skill in the art to filter items for relevance to a user’s query using combined content and collaborative data. In I/P Engine’s view, the prior art simply took the results of content-based filtering and “threw them over a proverbial wall to a separate profile-based [filtering] system,” but did not also throw the search query “over the wall” for use in the filtering process. Br. of Plaintiff-Cross Appellant at 6-7; see also id. at 4(M3; J.A. 3689-90, 3728-31.
The fundamental flaw in I/P Engine’s argument is that using an individual user’s search query for filtering was a technique widely applied in the prior art. Indeed, the shared specification of the '420 and '664 patents acknowledges that “conventional search engines” filtered search re-suits using the original search query. See '420 patent col.2 11.15-18 (explaining that “conventional search engines initiate a search in response to an individual user’s query and use content-based filtering to compare the query to accessed network informons ” (emphasis added)). Given that its own patents acknowledge that using the original search query for filtering was a “conventional” technique, I/P Engine cannot now evade invalidity by arguing that integrating the query into the filtering process was a non-obvious departure from the prior art. See PharmaStem, 491 F.3d at 1362 (“Admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness.”); see also Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1570 (Fed.Cir.1988) (“A statement in a patent that something is in the prior art is binding on the applicant and patentee for determinations of anticipation and obviousness.”).
While I/P Engine acknowledges that the prior art disclosed “conventional ‘content-based filtering’ in response to a query,” it contends that the prior art did “not show or suggest using content and collaborative data together in filtering items for relevance to a query.” Br. of Plaintiff-Cross Appellant at 43. This argument “tak[es] an overly cramped view of what the prior art teaches.” Allergan, Inc. v. Apotex Inc., 754 F.3d 952, 963 (Fed.Cir.2014). The Culliss patent renders the asserted claims obvious because it plainly discloses using combined content and collaborative *988 data when analyzing information for relevance to a user’s search query. In the Culliss system, Internet articles are assigned a “key term score” for significant words or phrases. J.A. 5521. Culliss teaches content-based analysis because the key term score can initially be based on the number of times a particular term appears in an article.[6] J.A. 5526. Culliss also describes collaborative feedback analysis because the key term score will be increased when search engine users who query particular key terms select an article from the search results list. J.A. 5521. Significantly, moreover, Culliss presents articles to users based upon their key term scores for the terms that were used in a user’s search query. J.A. 5521 (“As users enter search queries and select articles, the scores are altered. The scores are then used in subsequent searches to organize the articles that match a search query.” (emphasis added)). Culliss, therefore, squarely discloses using combined content and collaborative data in analyzing items for relevance to a query.
I/P Engine contends that Culliss does not anticipate because it “describes a system for ranking items, not filtering them, as required by the asserted claims.” Br. of Plaintiff-Cross Appellant at 54. As Dr. Lyle Ungar, the Google Defendants’ expert, explained at trial, however, “the standard way of filtering is to rank things and pick all items above a threshold.” J.A. 3366. Notably, moreover, Culliss discloses an embodiment in which articles that are given an “X-rated” score for adult content are filtered out and not displayed to persons who enter “Grated” queries. J.A. 5525. At trial, Carbonell asserted that Culliss was not enabled because it did not provide for a “workable” filtering system. J.A. 3717. In support, he argued that a certain number of G-rated searchers might have to view an article before it would be labeled as Xrated and screened from subsequent G-rated searches. J.A. 3718-19. There is no credible evidence, however, that Culliss would not ultimately succeed in filtering X-rated articles from being viewed by G-rated searchers. See Cephalon, Inc. v. Watson Pharms., Inc., 707 F.3d 1330, 1337 (Fed.Cir.2013) (emphasizing that a patent is presumptively enabled and that “the challenger bears the burden, throughout the litigation, of proving lack of enablement by clear and convincing evidence”). Even more importantly, while “a prior art reference cannot anticipate a claimed invention if the allegedly anticipatory disclosures cited as prior art are not enabled,” In re Antor Media Corp., 689 F.3d 1282, 1289 (Fed.Cir.2012) (citations and internal quotation marks omitted), a nonenabling reference can potentially qualify as prior art for the purpose of deter *989 mining obviousness, Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1578 (Fed.Cir.1991); see Geo. M. Martin Co. v. Alliance Mach. Sys. Int’l LLC, 618 F.3d 1294, 1302 (Fed.Cir.2010) (“Under an obviousness analysis, a reference need not work to qualify as prior art; it qualifies as prior art, regardless, for whatever is disclosed therein.” (citations and internal quotation marks omitted)); Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed.Cir.1989) (“Even if a reference discloses an inoperative device, it is prior art for all that it teaches.”). Thus, even assuming arguendo that the Culliss filtering system was not fully functional, this does not mean that it does not qualify as prior art for purposes of the obviousness analysis.
Significantly, moreover, the obviousness inquiry “not only permits, but requires, consideration of common knowledge and common sense.” DyStar Textilfarben GmbH & Co. v. C.H. Patrick Co., 464 F.3d 1356, 1367 (Fed.Cir.2006); see KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (eschewing “[rjigid preventative rules that deny factfinders recourse to common sense”); Perfect Web Techs., Inc. v. InfoUSA Inc., 587 F.3d 1324, 1329 (Fed.Cir.2009) (explaining that the obviousness analysis “may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion”); Leapfrog Enters., Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1161 (Fed.Cir.2007) (emphasizing that “the common sense of those skilled in the art” can be sufficient to “demonstrate[ ] why some combinations would have been obvious where others would not”). Very basic logic dictates that a user’s search query can provide highly pertinent information in • evaluating the overall relevance of search results. See, e.g., 420 patent col.l 11.21-23 (explaining that a “query” is “a request for information relevant to ... a field of interest”); id. col.4 11.5-6 (“The ‘relevance’ of a particular informon broadly describes how well it satisfies the user’s information need.”). As Ungar explained, the query would be just “sitting there” with the results of a search, and it would have been obvious to one skilled in the art “to keep around the query and use that also for filtering.” J.A. 3173.[7] “A person of ordinary skill is ... a person of ordinary creativity, not an automaton,” KSR, 550 U.S. at 421, 127 S.Ct. 1727, and the obviousness inquiry must take account of the “routine steps” that a person of ordinary skill in the art would employ, Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc., 555 F.3d 984, 993 (Fed.Cir.2009); see Soverain Software LLC v. Newegg Inc., 705 F.3d 1333, 1344, amended on reh’g, 728 F.3d 1332 (Fed.Cir.2013) (concluding that claims directed to an online shopping system were invalid as obvious given that the patentee “did not invent the Internet, or hypertext, or the URL” and using hypertext to communicate transaction information was no more than “a routine incorporation of Internet technology into existing processes”). Because the query was readily available and closely correlated to the overall relevance of search results — and the prior art unequivocally disclosed hybrid content-based/collaborative filtering — retaining the query for use in filtering combined content and collaborative data was “entirely predictable and grounded in common sense.” Ball Aerosol, 555 F.3d at 993; see W. Union Co. v. MoneyGram Payment Sys., Inc., 626 F.3d *990 1361, 1372 (Fed.Cir.2010) (concluding that the asserted dependent claims, which “add[ed] only trivial improvements that would have been a matter of common sense to one of ordinary skill in the art,” were obvious as a matter of law); Perfect Web, 587 F.3d at 1331 (concluding that a claimed method for sending e-mails was obvious because “simple logic suggests that sending messages to new addresses is more likely to produce successful deliveries than re-sending messages to addresses that have already failed”); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1326-27 (Fed.Cir.2008) (concluding that claims which added a web browser to a prior art electronic system were obvious as a matter of law). While our conclusion that the asserted claims are invalid as obvious is grounded on the determination that the prior art, most notably Culliss, disclosed use of the search query when filtering combined content-based and collaborative data, the common sense of a skilled artisan would likewise have suggested retaining the query for use in the filtering process.
III. The Jury’s Findings
I/P Engine points to the fact that the jury found that there were differences between the prior art and the claimed invention, see J-.A. 4170-72, and argues that on appeal “the only question is whether substantial evidence supports the jury’s findings.” Br. of Plaintiff-Cross Appellant at 40. There are a number of reasons why we do not find this reasoning persuasive. First, not all of the jury’s findings support non-obviousness. To the contrary, the jury found that the invention claimed in the '664 patent had been “independent[ly] invented] ... by others before or at about the same time as the named inventor thought of it.” J.A. 4172. As we have previously made clear, near-simultaneous development of a claimed invention by others can, under certain circumstances, demonstrate obviousness. See Geo. M. Martin, 618 F.3d at 1305 (“Independently made, simultaneous inventions, made within a comparatively short space of time, are persuasive evidence that the claimed apparatus was the product only of ordinary mechanical or engineering skill.” (citations and internal quotation marks omitted)). Thus, as the Google Defendants correctly note, the jury’s findings are a “mixed bag” on the obviousness question. Br. of Defendants-Appellants at 40.
Second, some of the jury’s findings appear internally inconsistent. In making their arguments on obviousness, neither I/P Engine nor the Google Defendants drew any distinction between the '420 patent and the '664 patent. Indeed, counsel for I/P Engine referred to the asserted patents simply as the “Lang and Kosak invention” when discussing differences between the prior art and the asserted claims. J.A. 3730. The jury found, however, that the invention claimed in the '664 patent had been independently invented by others, whereas the invention claimed in the '420 patent had not. J.A. 4171-72. Likewise, while the jury found that there had been unsuccessful attempts by others to develop the invention claimed in the '420 patent, it determined that there were no such attempts with respect to the invention disclosed in the '664 patent. J.A. 4170, 4172.
Finally, and most importantly, while the jury made underlying determinations as to the differences between the asserted claims and the prior art, it did not address the ultimate legal conclusion as to obviousness. Thus, while the jury found that the prior art did not disclose all of the elements of the asserted claims, J.A. 4170-71, it never determined whether it would have been obvious to one skilled in the art to bridge any differences between the prior *991 art and the claimed invention. See Bos. Scientific Scimed, Inc. v. Cordis Corp., 554 F.3d 982, 990 (Fed.Cir.2009) (“When we consider that, even in light of a jury’s findings of fact, the references demonstrate an invention to have been obvious, we may reverse its obviousness determination.”); see also Soverain, 705 F.3d at 1337 (emphasizing that “the question of obviousness as a matter of law receives de novo determination on appeal”); Jeffries v. Harleston, 52 F.3d 9, 14 (2d Cir.1995) (concluding that “hopelessly irreconcilable” jury findings did not require a retrial because “elementary principles” of law compelled one result).
IV. Objective Indicia of Non-Obviousness
“This court has consistently pronounced that all evidence pertaining to the objective indicia of nonobviousness must be considered before reaching an obviousness conclusion.” Plantronics, Inc. v. Aliph, Inc., 724 F.3d 1343, 1355 (Fed.Cir.2013). Here, however, I/P Engine introduced scant evidence on secondary considerations. See Allergan, Inc. v. Sandoz Inc., 726 F.3d 1286, 1293 (Fed.Cir.2013) (concluding that secondary considerations did “not weigh heavily in the obviousness analysis”). Indeed, the district court did not even cite to the jury’s findings on secondary considerations when it concluded 'that the asserted claims were not invalid for obviousness. See Non-Obviousness Order, 2012 U.S. Dist. LEXIS 166555, at *7-9.
We find no merit in I/P Engine’s argument that the commercial success of Google’s accused advertising systems provides objective evidence of non-obviousness. “Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.” Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311-12 (Fed.Cir.2006). At trial, however, I/P Engine never established a nexus between the success of Google’s accused systems and the patented invention.[8] Indeed, I/P Engine’s damages expert agreed that the accused technology encompassed numerous features not covered by the asserted patents, and acknowledged that he had not evaluated the issue of whether the patented technology drove consumer demand for Google’s advertising platform. J.A. 2772-73.
Under certain circumstances, the “copying” of an invention by a competitor may constitute evidence that an invention is not obvious. See Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1325 (Fed.Cir.2004); Vandenberg v. Dairy Equip. Co., 740 F.2d 1560, 1567 (Fed.Cir.1984). Contrary to I/P Engine’s assertions, however, the fact that one of Google’s patents cited to the '420 patent does not establish that Google copied the invention disclosed in that patent. Nor is the fact that Google did not provide evidence at trial as to how it developed its accused advertising system sufficient to establish that it copied the claimed invention. See Wyers v. Master Lock Co., 616 F.3d 1231, 1246 (Fed.Cir.2010) (“Our case law holds that copying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or *992 access to the patented product combined with substantial similarity to the patented product.”).
The jury found “[ajcceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.” J.A. 4171-72. Carbonell acknowledged, however, that although he had been in the “search industry” for thirty years he was unaware of any “praise” that I/P Engine’s purported invention had received. J.A. 3788. Likewise, although the jury found “unexpected and superior results from the claimed invention,” J.A. 4171-72, there was no evidence, other than conclusory testimony from Carbonell, see J.A. 3691-92, 3740, that the results of the patented system were unexpected. See SkinMedica, Inc. v. Histogen Inc., 727 F.3d 1187, 1210 (Fed.Cir.2013) (emphasizing that expert opinions that “are conclusory and incomplete” have little evidentiary value). Accordingly, secondary considerations cannot overcome the strong prima facie case of obviousness.[9] See Leapfrog, 485 F.3d at 1162.
Conclusion
Accordingly, the judgment of the United States District Court for the Eastern District of Virginia is reversed.
REVERSED
Opinion for the court filed PER CURIAM. Concurring.
Opinion filed by Circuit Judge MAYER. Dissenting.
Opinion filed by Circuit Judge CHEN.

. The specifications of the '420 and '664 patents are substantively identical, but employ slightly dissimilar line numbering. Unless otherwise noted, citations to the specification refer to the line numbering used in the '420 patent.

. The parties stipulated that the term "infor-mon” referred to an "information entity of potential or actual interest to the [individual/first] user.” I/P Engine, Inc. v. AOL Inc., 874 F.Supp.2d 510, 517 (E.D.Va.2012) (internal quotation marks omitted) (“Claim Construction Order”). The asserted patents explain that an "informon” can be all or part of a text, video, or audio file. '420 patent col.3 11.30-35.

. In 2012, I/P Engine became a subsidiary of Vringo, Inc. J.A.2046-47.

. The jury also awarded I/P Engine a running royalty of 3.5%. J.A. 4173.

. I/P Engine points to recent United States Patent and Trademark Office ("PTO”) reexamination proceedings which concluded that Rose and WebHound do not anticipate the asserted claims of the '420 patent. J.A. 7899-902. Here, however, the question is not whether Rose and WebHound anticipate the asserted claims, but instead whether the prior art, viewed as a whole, renders the asserted claims obvious. See Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1364 (Fed.Cir.2008) ("Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference.”); Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1166 (Fed.Cir.2006) (explaining that in an obviousness analysis "the prior art must be considered as a whole for what it teaches”).

. Dr. Jaime Carbonell, I/P Engine's expert, asserted that Culliss does not disclose content-based filtering as required by the asserted claims because Culliss' repeated feedback-based adjustments to a key term score will dilute or "swamp” the content portion of the score over time. J.A. 3714, 3787. Notably, however, while the asserted claims require content-based filtering, they do not mandate that content-based analysis play a dominant role in the filtering process. See '420 patent col.28 11.1-15; '664 patent col.27 11.27-37. Thus, the fact that in the Culliss system content data may play less and less of a role as more user feedback is obtained does not mean that Culliss does not disclose content-based filtering. To the contrary, Culliss explains that while feedback can raise an article’s key term score (when the article is clicked on by other users), it can also lower that score (when the article is not clicked on by other users). J.A. 5527 ("[I]f the user does not select the matched article, the key term score for that matched article under that key term can be assigned a negative score.”). Thus, the positive and negative feedback adjustments could potentially nearly "cancel each other out,” and content data could play a very significant role in setting an article’s overall score.

. The parties stipulated that, for purposes of both the '420 and '664 patents, a person of ordinary skill in the art was "an individual with a bachelor's degree in computer science with at least [two] years of experience.” J.A. 39.

. Nor did I/P Engine present evidence that any owner of the asserted patents had ever used the claimed system commercially. See Soverain, 705 F.3d at 1346 (finding no commercial success where the claimed electronic commerce system "was abandoned by its developers and almost all of its original users”).

. Because we conclude that the asserted claims are obvious as a matter of law, we need not reach issues related to infringement and damages.