| | Pay Period | Hours Worked | Gross Amount Paid ($) |
|---|---|---|---|
| 1 | Feb. 1-15, 2014 | 17.30 | 147.05 |
| 2 | Feb. 16-28, 2014 | 49.30 | 419.05 |
| 3 | March 1-15, 2014 | 70 | 630.00 |
| 4 | March 16-31, 2014 | 89.8 | 830.25 |
| 5 | April 1-15, 2014 | 93.10 | 841.05 |
| 6 | April 16-30, 2014 | 80.50 | 727.65 |
| 7 | May 1-15, 2014 | 90.50 | 815.85 |
| 8 | May 16-31, 2014 | 72.60 | 653.40 |
| 9 | June 1-15, 2014 | 83.20 | 748.80 |
| 10 | June 16-30, 2014 | 84.30 | 845.00 |
| 11 | July 1-15, 2014 | 83.90 | 839.00 |
| 12 | July 16-31, 2014 | 94 | 980.00 |
| 13 | Aug. 1-15, 2014 | 90.90 | 909.00 |
| 14 | Aug. 16-31, 2014 | 79.60 | 798.00 |
| 15 | Sept. 1-15, 2014 | 85.60 | 859.50 |
| 16 | Sept. 16-30, 2014 | 76.60 | 766.00 |
| 17 | Oct. 1-15, 2014 | 78.30 | 783.00 |
| 18 | Oct. 16-31, 2014 | 89 | 890.00 |
| 19 | Nov. 1-15, 2014 | 81 | 810.00 |
| 20 | Nov. 16-30, 2014 | 60 90 | 609.00 |
| 21 | Dec. 1-15, 2014 | 79.40 | 794.00 |
| 22 | Dec. 16-31, 2014 | 75 | 750.00 |
| 23 | Jan. 1-15, 2015 | 82.10 | 821.00 |
| 24 | Jan. 16-31, 2015 | 76.50 | 841.50 |
| 25 | Feb. 1-15, 2015 | 82.20 | 904.20 |
| 26 | Feb 16-28, 2015 | 68.39 | 752.29 |
| 27 | March 1-15, 2015 | 77 | 847.00 |
| 28 | March 16-31, 2015 | 69.20 | 761.20 |
| 29 | April 1-15, 2015 | 67.70 | 744.70 |
| | Average Hours Worked Per Week Between April 16, 2014 – April 17, 2015 (total hours/52) | 1,908.39/52 = 36.69 | |
| | Total Earned Between April 16, 2014 – April 17, 2015 | | $19250.09 |
| | Average Earned per Week ($19,250.09/52) | | $370.19 |

**ZKEY INVESTMENTS, LLC, Plaintiff,**

**v.**

**FACEBOOK INC., Defendant.**

CV No. 16–00782–RSWL–KS

United States District Court,
C.D. California.

Signed 12/02/2016

Eric J. Enger, Michael F. Heim, R. Allan Bullwinkel, Heim Payne & Chorush LLP, Demetrios Anaipakos, Michael D. McBride, Foster C. Johnson, Amir H. Alavi, Ahmad Zavitsanos Anaipakos Alavi and Mensing PC, Houston, TX, Joseph K. Liu, One LLP, Newport Beach, CA, for Plaintiff.

Michael G. Rhodes, Cooley LLP, San Francisco, CA, Andrew Mace, Mark R. Weinstein, Heidi Lyn Keefe, Cooley LLP, Palo Alto, CA, for Defendant.

## ORDER Re: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [53]

HON. RONALD S.W. LEW, Senior U.S. District Judge

## I. INTRODUCTION

Currently before the Court is Defendant Facebook, Inc.'s ("Defendant") Motion for Summary Judgment ("Mot.") [53] against Plaintiff Zkey Investments, LLC ("Plaintiff"). The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** Defendant's Motion for Summary Judgment [53] is **GRANTED.**

## II. BACKGROUND

### A. Factual Background

Plaintiff's action alleges that Defendant's online networking services infringe on United States Patent No. 6,820,204 ("'204 Patent") in violation of 35 U.S.C. § 271.

Plaintiff is a limited liability company existing under the laws of Delaware with its principal place of business in New York. Compl. 1:5–7, ECF No. 1. Plaintiff owns the '204 Patent, entitled "System and Method for Selective Information Exchange" and has the right to sue and recover damages for infringement thereof. Id. at 4:2–6. The '204 Patent's abstract describes the invention as follows:

> A system and method for providing users with granular control over arbitrary information that allows for selective, real-time information sharing in a communications network such as the Internet is provided. In a network including a plurality of network devices operated by a plurality of users, a real-time information exchange system for sharing user profile information between respective users includes a database management system connected to the network. The database management system, which may be distributed across the network, stores the user profile information for a plurality of registered users of the information exchange system. The user profile information includes a plurality of data elements, each data element having an associated one of the plurality of registered users. Each data element has an associated group of users to whom access to the data element has been granted, and users not included in the associated group of users are denied access to the data element. Each registered user may selectively control the granting and denying of access to each of its associated data elements by other respective users, on an element-by-element, and user-by-user basis. Further, each registered user may dynamically create its own data fields.

Id. at Ex. 1.

Defendant is a Delaware corporation with its headquarters in Menlo Park, California. Id. at 1:8–9. Defendant also maintains California offices in Los Angeles and Woodland Hills. Id. at 1:10–11. Defendant provides online networking services ("Facebook Networking Services"), mobile applications, plug-ins, and other tools in the United States. Id. at 2:27–3:2. Facebook Networking Services are provided by a multitude of Facebook–controlled servers, including, but not limited to, web servers and database servers. Id. at 3:2–4. Facebook's "mission is to give people the power to share and make the world more open and connected." Id. at 3:7–8. In order to achieve this, various user profile information can be stored, including "Work and Education," "Places You've Lived," "Contact and Basic Info," "Family and Relationships," "Details About You," and "Life Events." Id. at 3:8–11. Users are allowed to limit access to this information. Id. at 3:11–13. For example, users can limit access to the "Address" portion of their

"Contact and Basic Info" user profile to the "Public," "Friends," "Close Friends," "Family," or "Specific People or Lists," including the ability to deny particular users access. Id. at 3:13–17.

Plaintiff alleges that Defendant's manufacturing and uses of the system that implements Facebook Networking Services infringes numerous claims of the '204 Patent, including at least claims 1–2. Id. at 4:7–11. Claim 1 of the '204 Patent recites:

> In a network including a plurality of network devices operated by a plurality of users, a real-time information exchange system for sharing user profile information between respective users:
>
> a database management system connected to the network and storing the user profile information for a plurality of registered users of the information exchange system, the user profile information including a plurality of data elements, each data element having associated one of the plurality of registered users; wherein each data element has an associated subset of users to whom access to the data element has been granted; and wherein users not included in the associated subset of users are denied access to the data element.

Mace Decl., Ex. 1. Claim 2 of the '204 Patent recites:

> The information exchanging system of claim 1 further including:
>
> a profile management application executing on the information exchange system, the profile management application providing each respective user with facilities to selectively control the granting and denying of access to each of its associated data elements by other respective users.

Id.

## B. Procedural Background

On February 4, 2016, Plaintiff filed a Complaint in the United States District Court, Central District of California. In the Complaint, Plaintiff brings a claim of patent infringement seeking injunctive relief and damages in violation of 35 U.S.C. § 271. ECF No. 1. On June 3, 2016, Defendant filed an Answer to Plaintiff's Complaint. ECF No. 42.

On August 30, 2016, Defendant filed a Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101. ECF No. 53. On August 30, Defendant also filed a Statement of Uncontroverted Facts and Conclusions of Law. ECF No. 54. On September 27, 2016, Plaintiff filed an Opposition. ECF No. 57. On September 27, 2016, Plaintiff also filed a Statement of Genuine Disputes. ECF No. 59. On October 11, 2016, Defendant filed a Reply. ECF No. 60. On October 24, 2016, Plaintiff filed an Objection to Defendant's New Evidence First Submitted in Defendant's Reply to the Motion for Summary Judgment. ECF No. 64. On October 25, 2016, Defendant filed a Response to Plaintiff's Objection. ECF No. 65. On November 2, 2016, Plaintiff filed a Notice of Supplemental Authority in Opposition to Defendant's Motion. ECF No. 66.

## III. DISCUSSION

### A. Legal Standard

#### 1. Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for

the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. Twentieth Century–Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255, 106 S.Ct. 2505.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Nissan Fire & Marine Ins., 210 F.3d at 1102–03; see Fed. R. Civ. P. 56(a). Summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact." Anderson, 477 U.S. at 247–48, 106 S.Ct. 2505.

## 2. Patent Eligibility Under 35 U.S.C. § 101

▉ Patent–eligibility is a question of law. OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362 (Fed. Cir. 2015). Section 101 of the Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: laws of nature, natural phenomena, and abstract ideas are not patentable." Alice Corp. Pty. v. CLS Bank, Int'l, —— U.S. ——, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014). "The concern that drives this exclusionary principle" is "one of preemption." Id. In other words, the concern is " 'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." Id. (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 132 S.Ct. 1289, 1301, 182 L.Ed.2d 321 (2012)). The Supreme Court in Alice warns courts, however, to "tread carefully in construing this exclusionary principle lest it swallow all of patent law," because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.' " Id. (quoting Mayo, 132 S.Ct. at 1293).

▉ Under the two-step framework established in Alice and Mayo, the court first asks "whether the claims at issue are directed to one of those patent-ineligible concepts," as opposed to "patent eligible applications of those concepts." Id. at 2354–55. If so, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Id. at 2355 (quoting Mayo, 132 S.Ct. at 1297–98). In this second step, the court looks for an "inventive concept," or "an element or combination of elements that is 'sufficient

to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Id. (quoting Mayo, 132 S.Ct. at 1294).

This standard is easier to articulate than it is to apply. Modern Telecom Sys. LLC v. Earthlink, Inc., No. SA CV 14–0347–DOC, 2015 WL 1239992, at *6 (C.D. Cal. Mar. 17, 2015). "The line between a patentable 'process' and an unpatentable 'principle' is not always clear," Parker v. Flook, 437 U.S. 584, 589, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978), and the Federal Circuit has referred to § 101 jurisprudence as a "murky morass." MySpace, Inc. v. GraphOn Corp., 672 F.3d 1250, 1259 (Fed. Cir. 2012) (suggesting, in dicta, that "courts could avoid the swamp of verbiage that is § 101" by addressing patentability defenses under §§ 102, 103, and 112 before addressing patent eligibility under § 101).

## B. Analysis

### 1. The Claims of the '204 Patent Are Abstract and Fail Under Step One of the Alice/Mayo Inquiry

As an initial matter, some courts have commenced patent-eligibility analysis under § 101 by engaging in claim construction to understand the subject-matter at issue. However, claim construction is not required in every § 101 analysis and in the current case before the Court claim construction is not required.[1]

Under the first step of the Alice/Mayo inquiry, the Court must determine wheth-er the patent claims at issue are directed to an abstract idea. Defendant alleges that the claims in the '204 patent are directed to an abstract idea "of allowing individuals to manage and selectively share with others items of information about themselves." Mot. 1:10–12. Defendant argues that the '204 Patent acknowledges that people have selectively shared information with others about themselves without the aid of computer technology. Id. at 2:18–25.

■ There is no clear rule or category that must be analyzed in determining what constitutes an abstract idea. Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has not established a definitive rule to determine what constitutes an "abstract idea" sufficient to satisfy the first step of the Alice/Mayo inquiry. Id. Rather, courts have compared claims at issue to previous cases in determining whether the claims at issue are directed to an abstract idea. Id. at 1334–35.

■ To determine whether a claim is directed to an abstract idea, courts must identify the purpose of the claim, that is "what the claimed invention is trying to achieve" and if that purpose is abstract. Cal. Inst. Tech. v. Hughes Commc'ns Inc., 59 F.Supp.3d 974, 991–92 (C.D. Cal. 2014). Despite Plaintiff's efforts, Plaintiff fails to convince this Court that the claims in the '204 Patent are not abstract. Plaintiff's description of the '204 Patent as a "net-

---

1. Wolf v. Capstone Photography, Inc., No. 2:13–cv–09573, 2014 WL 7639820, at *5 (C.D. Cal. October 28, 2014); Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.), 687 F.3d 1266, 1273–74 (Fed. Cir. 2012); Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Some courts have found that doing a § 101 analysis without claim construction is an efficient use of court resources and saves on litigation costs because claim con-struction is needed before a § 101 analysis " 'only where claim construction disputes are relevant.' " Wolf, 2014 WL 7639820 at *6 (quoting I/P Engine, Inc. v. AOL Inc., 576 Fed.Appx. 982, 996–97 (Fed. Cir. 2014)). However, as neither party brought up the issue of claim construction and the matter can be resolved without claim construction, this is not an issue the Court needs to address.

worked, real-time electronic information exchange system that permits a user to exercise granular control over access to specific data elements in a user profile stored by a database management system" does not change the very premise and purpose of the patent. Opposition (Opp'n) 11:10–13. The invention's purpose is to allow users to have "granular control" over specific information that is stored by a database. Users can then choose who is granted and denied access to this information. The information can be pre-populated, or users have the option to create new categories of information for the database to store, such as a favorite beer, as Plaintiff suggests. Id. at 9:17–21. However, the computer-related terms used by Plaintiff do not change the purpose of the '204 Patent–users are able to have control of what information is stored in the database and who has access to the information as it is updated in real-time.

Similar to Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) cert. denied —— U.S. ——, 136 S.Ct. 119, 193 L.Ed.2d 208 (2015), claim 1 of the '204 Patent is directed to the abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." [2] Claim 1 is directed at providing a method for people to collaborate and share information without the need for specialized software or expertise. Open

Text S.A. v. Box, Inc., 78 F.Supp.3d 1043, 1046–47 (N.D. Cal. 2015).

In In re TLI Communications LLC Patent Litigation, 823 F.3d 607, 611 (Fed. Cir. 2016), the court held the claim in the patent was directed to an abstract idea because images were classified and stored based on the classification. The court noted that the server was described "simply in terms of performing generic computer functions such as storing, receiving, and extracting data." Id. at 612. There is a difference in a claim which focuses on an "improvement to computer functionality itself" rather than a claim which is simply implemented on a computer. Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1258–62 (Fed. Cir. 2016); Alice, 134 S.Ct. at 2358. The court in Bascom Global Internet Srvcs., Inc. v. AT & T Mobility LLC, 827 F.3d 1341, 1346 (Fed. Cir. 2016), noted that "filtering content" or "determining who gets to see what" is a well-known "method of organizing human activity" in step one of the Alice/Mayo analysis. The court in Alice also held that the concept of intermediated settlement without more was also an abstract concept not patent-eligible. 134 S.Ct. at 2356–57.

Similarly, the remaining claims of the '204 Patent are also directed towards an abstract, patent-ineligible concept as they are mostly dependent claims on claim 1 and are the means by which information is collected, analyzed, and displayed based on the user's granting or denial of access to other registered and non-registered users.[3] Electric Power Group, LLC v. Al-

---

**2.** Claim 1 of the '204 Patent states that "[i]n a network including a plurality of network devices operated by a plurality of users, a real-time information exchange, system for sharing user profile information between respective users of the network devices, compromising: a database management system connected to the network and storing the user profile information....the user profile information including a plurality of data ele-

ments ... wherein each data element has an associated subset of users to whom access to the data element has been granted; and ... users not included in the associated subset of users are denied access to the data element." Mace Decl., Ex. 1 at 64.

**3.** Claim 2 is dependent on claim 1 as it includes "a profile management system, the profile management application providing

stom S.A., 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). When information is analyzed by steps that people can go through in their minds or by mathematical algorithms, courts have found these are mental processes that fall within the abstract concept category of step one. Id. (citing see TLI, 823 F.3d at 613; Digitech Image Techs., LLC v. Elecs. for Imaging, Inc., 758 F.3d 1344, 1351 (Fed. Cir. 2014); SmartGene, Inc. v. Advanced Biological Labs., SA, 555 Fed.Appx. 950, 955 (Fed. Cir. 2014); Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.), 687 F.3d 1266, 1278 (Fed. Cir. 2012); Cyber-Source Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1372 (Fed. Cir. 2011); SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1333 (Fed. Cir. 2010); see also Mayo, 132 S.Ct. at 1301; Parker v. Flook, 437 U.S. 584, 589–90, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978); Gottschalk v. Benson, 409 U.S. 63, 67, 93, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972)). While Walker Digital, LLC v. Google, Inc., 66 F.Supp.3d 501, 515 (D. Del. 2014) is not binding precedent on this Court, the court there makes a persuasive argument regarding ideas that can be performed entirely in one's own mind and finding that routine and conventional step is not patentable subject matter. The Federal Circuit in CyberSource, 654 F.3d at 1373, also held that methods which can be performed in the human mind are the very types of methods that embody "the basic tools of scientific and technological work" free to all persons. Furthermore, "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." Electric Power Group, 830 F.3d at 1354. Claims 2–3, 5, 8–11, and 16–17 are claims derived from claim 1 whereby the each respective user with facilities to selectively control the granting and denying of access to each of its associated data elements by other respective users." Mace Decl., Ex. 1 at 64. Claim 3 is the system of claim 2 where "the user profile information includes a set of pre-defined data fields" and where the application is "adapted to dynamically create new data fields for storing a new data element, upon the request of a registered user." Id. Claim 5 is the system of claim 4 where the "database management system" is connected to the network through a "physical firewall" and adapted to store the information the user inputs. Id. Claim 8 is the system of claim 4 where the application provides each user with facilities to "push individual data elements to respective users." Id. Claim 9 is the system of claim 4 where at least one network device has synchronization software which detects network connectivity and downloads updated information about each user. Id. Claim 10 is the system of claim 9 where the application gives each user facilities to define views of the user's profile information where each view includes at least one data element of the user. Id. Claim 11 is the system of claim 10 where the application gives each user facilities to define user groups where there is at least one user in each group and each user can selectively grant or deny members of each group access. Id. Claim 16 is an independent claim similar to claim 1 and is a "database management system" which stores a "subset of the user profile data for a plurality of registered users of the information exchange system, the first subset of profile information including a plurality of data elements, each data element having an associated one of the plurality of registered users; and a first network server connected to the network and the first database management system, the first network server including: a first processor; and a first program memory connected to the first processor and having program instructions stored therein, the first processor being operable to execute te program instructions, the program instructions: for each registered user, selectively granting and denying access to each of the registered user's associated data elements, to other users in the network." Id. at 65. Claim 17 is the system of claim 16 where there is a second database storing a second subset of the user profile data for a plurality of users of the system with a second network server, processor and program memory. Id.

users are able to selectively choose who is granted and denied access to their user profile information and illustrate the results of collecting and analyzing information and are also directed to an abstract concept.

Plaintiff's argument that the '204 Patent is not abstract is unpersuasive. It appears Plaintiff only relies on Enfish and Bascom to support its contention that the '204 Patent is not abstract. Plaintiff asserts that when the claims of the '204 Patent are viewed as a whole, they are directed to "concrete improvements to database management systems for electronic information exchange systems" and not directed to an abstract idea. Opp'n 1:2–5. The claim limitations clearly show that the system improves computer functionality and does not implement just a well-known economic practice using general computer components. Id. at 1:5–8. The claims are "directed to a real-time information exchange system with a database management system that stores user profile information for a plurality of networked users." Id. at 1:19–21. Plaintiff also asserts the "database management system provides customizable features specific to each user" by giving "granular control" to each user in deciding which elements may be accessed by other particular users. Id. at 1:22–25. Not only can users determine what information to share with specific users, a user may also create "new user-defined data fields within the database." Id. at 5:1–2. Plaintiff asserts the limitations in claims 2–3, 5, and 8–11 all improve the functionality of the system and are not directed to an abstract idea. Id. at 14:1–11. Moreover, the fact that users can create new data fields to store information is an improvement over prior art systems because the user has granular control over who can access the information and what information is stored in the database. Almeroth Decl. 19:18–25.

The claims of the '204 Patent are unlike the claims in Enfish because here, the claims are not focused on improvement to computer functionality but are more focused and tailored to the use of computers "as tools in aid of processes focused" on an abstract concept. Electric Power Group, 830 F.3d at 1354; Enfish, 822 F.3d at 1335–36. And in Bascom, the court found that filtering internet content is an abstract idea because "it is a longstanding, well-known method of organizing human behavior." Bascom, 827 F.3d at 1348. Plaintiff has failed to show any genuine dispute as to any material fact that the claims of the '204 are not directed to an abstract concept and are therefore patent-eligible subject matter under § 101. Therefore, the Court finds that the claims of the '204 Patent are directed towards the abstract idea of collecting, storing, and sharing information of registered users with other registered and non-registered users.

2. The Claims of the '204 Patent Fail to Add an Inventive Concept and Fail Step Two of the Alice/Mayo Inquiry

If the threshold determination that the claims are directed to an abstract idea is met, we move to the second step of the inquiry and "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Enfish, 822 F.3d at 1334–35 (quoting Mayo, 132 S.Ct. at 1297–98). Having determined that the patent-in-suit is directed to an abstract idea, the Court must determine whether the patent includes "additional features to ensure that the claim[s] [are] more than a drafting effort designed to monopolize the abstract idea." Alice, 134 S.Ct. at 2357. "Those 'ad-

ditional features' must be more than 'well-understood, routine, conventional activity.'" Ultramercial, Inc. and Ultramercial, LLC v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting Mayo, 132 S.Ct. at 1298). The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." Alice, 134 S.Ct. at 2358.

Defendant argues that the claims of the '204 Patent do not add any inventive concept to turn the abstract idea into a patent-eligible form. Defendant asserts the claims merely "recite textbook examples of the types of generic computer components that do not supply inventive concept" as set forth in Alice. Mot. 13:23–27. Claim 1 merely recites generic and conventional computer terms such as "network," "network device," and "database management system." Id. at 14:1–3. Plaintiff argues that the '204 Patent is an inventive concept in computer technology that overcomes existing problems. Opp'n 18:8–9. The database management system provides unique, customizable features to each user such as giving them granular control over each data element and the content of their profiles. Id. at 18:11–18. Prior systems did not adequately control access to the user's information and did not give granular control over their stored information. Id. at 19:8–10. Moreover, prior systems required multiple databases, which resulted in information needing to be updated in more than one database when a user wanted to update information. Id. at 19:18–24. Additionally, users can give access to the information to non-registered users which is a significant advancement over conventional information exchange systems because it provides a "discrete user interface facility that selectively associates data elements with authorized users." Id. at 22:22–28.

Here, the claims of the '204 Patent are computer functions that are "purely conventional." Alice, 134 S.Ct. at 2359 (quoting Mayo, 132 S.Ct. at 1298). Despite Plaintiff's assertions that the claims separately and when looked at in combination show that the '204 Patent is a "networked, real-time information system with a database management system that stores user profile information for a plurality of network users," it is similar to the case in Alice in that it "amounts to electronic recordkeeping-one of the most basic functions of a computer." Opp'n 18:10–12; Alice, 134 S.Ct. at 2359. The '204 Patent explains a system whereby users input either pre-defined or "dynamically" new user information and from that select either other registered or non-registered users from whom may or may not have access to the user's information. "[A]ll of these computer functions are 'well-understood, routine conventional activit[ies]' previously known to the industry." Alice, 134 S.Ct. at 2359 (quoting Mayo, 132 S.Ct. at 1294). Claim 1 is merely a database system connected to a network where information is stored and each piece of information is connected to a registered user and associated with a set of users who have access to that specific piece of information. Claim 2 further illustrates this with a "profile management application" that each user can selectively control who is granted and denied access to each piece of information. Courts have held that a "generic computer technology allow[ing] for a more efficient process does not confer patent eligibility." Wolf, 2014 WL 7639820 at *13. The remaining claims also do not add an inventive concept sufficient to transform this abstract concept into patent-eligible subject-matter.[4] Alice, 134 S.Ct. at 2358; (quoting Mayo, 132 S.Ct. at 1294).

---

**4.** The fact that the system has pre-defined "data fields" for data users or that users can

"dynamically create new data fields," is not an inventive concept. Moreover, claims 4 and

Similarly, as in OIP Technologies, 788 F.3d at 1362–64, the claims in the '204 Patent considered individually or as an "ordered combination" recite " 'well-understood, routine conventional activit[ies],' either by requiring conventional computer activities or routine data-gathering steps" and do not "transform" the abstract concept into patent-eligible subject-matter. Alice, 134 S.Ct. at 2358; (quoting Mayo, 132 S.Ct. at 1294). Utilizing a network to receive and send information "is not even arguably inventive." BuySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014).

The claims of the '204 Patent are different than those of the patent in Bascom where the court held that the patent there claimed a "technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) to filter content on the Internet that overcomes existing problems with other Internet filtering systems." 827 F.3d at 1351. Here, the claims of the '204 Patent do not do the same as in Bascom. The claims in the '204 Patent merely recite how a computer is utilized to do the conventional tool of recording data information from a user, storing that data, and releasing the data to an approved group of registered or non-registered users chosen by the user whose information is stored. The claims do not improve the functioning of a computer itself, however merely describe a manner in which to store and share information. Courts have held that "generic computer implementation," such as claims that add "interface," "network," and "database" is insufficient to transform a patent-ineligible abstract concept into a patent-eligible concept. Alice, 134 S.Ct. at 2352–57; Affinity Labs, 838 F.3d at 1264; Mayo, 132 S.Ct. at 1297.

Plaintiff provided this Court with the Federal Circuit's recent decision in Amdocs (Israel) Limited v. Openet Telecom, Inc., 841 F.3d 1288, 1300–01 (Fed. Cir. 2016), where the court held that the patent did provide an inventive concept because the components described in the patent were arranged in such a way to "achieve a technological solution to a technological problem specific to computer networks." However, the case before us is distinguishable from Amdocs. In Amdocs, the patent was solving a problem relating to databases not being able to handle the large amounts of data it was collecting. Id. at 1300–02. The patent allowed for efficiency and smaller databases as opposed to one large database, which had trouble managing all of its data. Id. It is a solution specific to a problem with computer networks. The claims in the '204 Patent are not a solution specific to the functionality of computers. The '204 Patent did not solve a problem of all network information going to one location making it difficult for the database to keep up with new informa-

5 describe multiple databases with one central database, which is nothing more than the routine steps in data-gathering and do not provide for an inventive concept. Claim 8 provides for "facilities" for users to "push" data to other users and claim 9 is software to detect the network's connectivity and download information that has been inputted by a user, however Plaintiff fails to show how that is an inventive concept any different from conventional computer activities. Claims 10 and 11 also do not show an inventive concept as they describe limitations in providing users with "facilities" to define views and user groups of their profile information but do not describe how these limitations are actually implemented and in what way, if any, they provide for an improvement in computer functionality. Claims 16 and 17 also recite a generic computer with "mere instruction to 'implemen[t]' an abstract idea 'on … a computer' " which does not transform the abstract concept into patent-eligible subject-matter. Alice, 134 S.Ct. at 2358 (quoting Mayo, 132 S.Ct. at 1301).

tion coming in, nor did it reduce congestion in one large database by creating smaller databases. Id. at 1302–03.

Plaintiff has failed to show any genuine dispute as to any material fact because when looked at individually and combined, the '204 Patent and its claims do not improve computer functionality and do not add an inventive concept. Thus, the claims of the '204 Patent fail step two of the Alice/Mayo inquiry to be patent-eligible subject matter under § 101, which supports granting Defendant's Motion for Summary judgment.

### 3. Plaintiff's Objections to Defendant's Reply and Expert Declaration are Overruled

The Ninth Circuit has held that "appellants cannot raise a new issue for the first time in their reply briefs." Thompson v. C.I.R., 631 F.2d 642 (9th Cir. 1980). Where new evidence is presented in a reply, the district should either not consider the new evidence, or not consider it without giving the other party the opportunity to respond. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996). However, where evidence is "submitted in direct response to proof adduced in opposition to a motion" it is not "new." Edwards v. Toys "R" Us, 527 F.Supp.2d 1197, 1205 n.31 (C.D. Cal. 2007)(citing Terrell v. Contra Costa Cnty., 232 Fed.Appx. 626, 629 n.2 (9th Cir. 2007)).

Plaintiff asks the Court to strike assertions Plaintiff argues were first raised in Defendant's Reply. Plaintiff does not make specific evidentiary objections, instead Plaintiff merely argues Defendant has included new arguments for the first time in its Reply and requests those new arguments be stricken or in the alternative Plaintiff be granted leave to file a sur-reply. The first is a figure from J. Glenn Brookshear's, Computer Science: An Overview (4th ed. 1994), in which Defendant argues this figure is similar to the '204 Patent in its organization where information is divided and is then "associated" by some type of identifier such as an user identification. Reply 2:15–4:9. Plaintiff argues Defendant should have raised this in their Motion and not for the first time in the Reply. Evid. Obj. 2:25–3:6. However, Defendant raises this because of Plaintiff's argument in the Opposition about how the claims of the '204 Patent, specifically this figure, solves a prior problem of "associating" each "data element" with a specific user who has "granular control" over the information giving the user control access to each "data element." Opp'n 4:14–25. Defendant's Reply is simply Defendant's attempt to rebut and contradict Plaintiff's assertion that the '204 Patent improves computer functionality. Moreover, the Court did not rely on this figure in its analysis and finding that the '204 Patent was directed to an abstract idea and that the claims fail to provide an inventive concept. Plaintiff's objection and request to strike this argument and evidence or be granted leave to file a sur-reply is overruled and denied.

Plaintiff also objects to the Declaration of Dr. Michael Shamos and the five pieces of evidence Dr. Shamos relies on including textbooks and other patents Defendant filed with its Reply. Plaintiff argues this also should have been included in Defendant's Motion. Evid. Obj. 3:7–12. However, this was done to specifically attack Plaintiff's expert and the arguments Plaintiff raised in its Opposition about how the claims of the '204 patent improved prior systems. Defendant's Reply provided evidence to rebut Plaintiff's assertions. Dr. Shamos' Declaration attacked Plaintiff's expert with rebuttal evidence. Defendant did not provide "new" evidence. Local Rule 7–10 provides the timeline of when "Reply

Papers" which include a reply memorandum, declarations, or other rebuttal evidence must be served and filed. The very fact that Defendant included a declaration of its own expert in its Reply is not grounds to strike the Declaration or grant Plaintiff leave to file a sur-reply. Additionally, the Court did not rely on or utilize Dr. Shamos' Declaration in its analysis and finding that the '204 Patent was directed to an abstract idea and that the claims fail to provide an inventive concept. Plaintiff's objection and request to strike this argument and evidence or be granted leave to file a sur-reply is overruled and denied.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment [53].

**IT IS SO ORDERED.**